JOHN N. AQUILINA
Attorney-at-Law
California Bar No. 096880
P.O. Box 80189
Rancho Santa Margarita, Ca. 92688
Telephone:  951-682-1700
E-mail:         Aquilina@johnaquilina.com

Attorney for Defendant,
CASSANDRA NICOLE GONZALES

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,          ) <br>                                Plaintiff,  ) <br>                                    ) <br>        vs.                                                ) <br>                                    ) <br> CASSANDRA NICOLE GONZALES,   ) <br>                               Defendant.  ) <br> _____ ) | Case No. 5:19-cr-00151-DSF-2 <br><br> DEFENDANT'S POSITION <br> REGARDING SENTENCING <br><br><br><br> (Hrg: 10-28-19; 8:30 am; Dept. 7A) |

      TO:     THE HONORABLE DALE S. FISCHER, JUDGE OF THE UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA;  NICOLA T. HANNA, UNITED STATES ATTORNEY, by ROBERT S. TRISOTTO, ASSISTANT UNITED STATES ATTORNEY;  MICHELLE A. CAREY, CHIEF UNITED STATES PROBATION OFFICER, by CRISTINA TORRES, DEPUTY UNITED STATES PROBATION OFFICER;  AND TO THE CLERK OF THE UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION:

1

Defendant, CASSANDRA GONZALES, by and through her counsel of record, JOHN N. AQUILINA, hereby submits the following as and for defendant's position regarding the appropriate sentence to be imposed in consideration and application of the sentencing factors set forth pursuant to 18 U.S.C. section 3553(a).

Dated: October 7, 2019, at Mission Viejo, California.

Respectfully submitted,

 /s/ John N. Aquilina
JOHN N. AQUILINA
Attorney for Defendant,
CASSANDRA GONZALES

## INDEX

| | Page |
|---|---|
| NOTICE | 1 |
| TABLE OF AUTHORITIES | 5 |
| MEMORANDUM | 6 |
| I. INTRODUCTION AND BACKGROUND | 6 |
| II. FACTUAL OBJECTIONS AND CLARIFICATIONS TO THE PRE-SENTENCE LETTER AND INVESTIGATION REPORT | 8 |
| III. SENTENCING GUIDELINE RANGE | 9 |
| IV. APPLICABLE LEGAL PRINCIPLES | 10 |
|     A. NATURE AND CIRCUMSTANCES OF OFFENSE | 10 |
|     B. HISTORY AND CHARACTERISTICS OF THE DEFENDANT | 11 |
|     C. NECESSITY OF JUST PUNISHMENT | 15 |
|     D. AFFORD ADEQUATE DETERRENCE AND PROTECTION OF THE PUBLIC | 16 |
|     E. AVOID DISPARITY OF SENTENCE | 16 |
| V. FINES AND RESTITUTION | 17 |
| CONCLUSION | 17 |

/////

/////

INDEX (cont'd.)

Page

EXHIBITS:

    A.    RIVERSIDE SUPERIOR COURT, CASE NUMBER RIM1901810, DOCKET    19

    B.    SAN BERNARDINO SUPERIOR COURT, CASE NUMBER MWV19011421, DOCKET    23

/////

/////

/////

# TABLE OF AUTHORITIES
Page(s)

**Statutory Authorities**

18 U.S.C. section 3553, subdivision (a)     2, 9, 10

California Health and Safety Code section 11364     14

California Penal Code section 488     14

**Judicial Authorities**

*Kimbrough v. United States* (2007) 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481     10

*United States v. Galante* (2nd Cir. 1997) 111 F.3d 1029     18

/////

/////

/////

# MEMORANDUM

## I.

## INTRODUCTION AND BACKGROUND

Defendant, CASSANDRA GONZALES, is a soon to be 31-year old, well educated, mother of two young girls, who lived a law abiding life, until approximately two years ago, when she was unable to handle the stress of motherhood, financial pressures, and marital problems. Prior to that time, Ms. Gonzales graduated from high school with honors, was gainfully employed, and actively involved with her daughters. By 2016-2017, she was a full-time, stay at home mother, who was assisting her husband and had a close relationship with her family. As a result of having quit her job to care for her daughters, and her husband's loss of his regular employment; however, Ms. Gonzales and her immediate family incurred significant financial problems.

In 2017, she, her husband, and their two children were forced to move in with her parents. Although fully supportive of Ms. Gonzales and her daughters, daily life became so stressful, that her parents forced her husband to move out. Ms. Gonzales was devastated by this development, and turned to an old group of friends, who "partied" and introduced her to using methamphetamine. Since Ms. Gonzales' mother was at home to care for her daughters, Ms. Gonzales took "advantage" of her situation, and joined in the party atmosphere with her friends.

6

This situation led to Ms. Gonzales engaging in minor criminal activities, including drug use and minor thefts. By 2019, some of her friends introduced her to another means of making money - transporting illegal aliens into the Inland Empire. Both Ms. Gonzales and her husband found this unlawful activity "harmless," yet financially beneficial, until they were arrested in April 2019.

Although initially granted her release on bond, by June 2019, the stress of her situation, caused her to revert to using methamphetamine until she was rearrested, re-incarcerated, and ordered permanently detained. Since her re-incarceration, and seeing the harm she caused her daughters, Ms. Gonzales finally realized her unlawful activities were not harmless, but caused her and her family grave hardship. Since her re-incarceration, Ms. Gonzales has been a model inmate, completed the Cross-roads jail program, and fully understands her need to disassociate herself from her "friends," attend to the needs of her daughters, and return to a law-abiding life as she had for the first twenty-eight years of her life.

Based on the information set forth in the pre-trial probation report, and this sentencing position statement, Ms. Gonzales agrees, and is prepared to comply with, all of the terms and conditions recommended by the probation officer. Ms. Gonzales sole request is that this court impose a sentence which allows her immediate release from custody, which is approximately thirty-days less than the term recommended by the probation department.

7

II.

## FACTUAL OBJECTIONS AND CLARIFICATIONS TO THE PRE-SENTENCE LETTER AND INVESTIGATION REPORT

Other than the following, and the arguments set forth in section III of this brief, the defense has no objections or corrections relating to the Probation Department's pre-sentence report (PSR) prepared in this matter.

Although the probation officer accurately relates Ms. Gonzales' feeling that she did not need on-going drug counseling and treatment (Probation Letter p. 4; PSR ¶ 70), she based this on her situation in jail and the absence of her having any urges to use drugs. Having undergone and completed the Cross-roads Program, addressing her personal and drug issues, she not only realizes her need for continuing assistance to be sure she does not relapse, but is willing to engage in whatever counseling and treatment program necessary to maintain her sobriety, continue her life as a supportive mother, and avoid further criminal behavior and re-incarceration. Based on her arrest and five-month period of incarceration, and her inability to be there for her children, Ms. Gonzales is prepared to do whatever is recommended or required of her.

/////

/////

/////

## III.

## SENTENCING GUIDELINE RANGE

In the pre-sentence letter and report, the probation officer correctly sets forth the applicable sentencing factors and calculations. In this regard, probation calculated the adjusted offense level at a level-12, reduced 2-levels for her early acceptance of responsibility, for a total offense level-10. (PSR p. 3, ¶¶ 33, 41.)

Based on her criminal history category I, and a range of six to twelve months incarceration, the probation officer recommends a 6-month period of incarceration, followed by a period of 3-years of supervised release on specified terms and conditions. (Letter p. 1, PSR p. 3.)  The probation officer does not find any basis for a further departure or variance. (PSR ¶¶ 103-104.)

Based on a detailed review of Ms. Gonzales' background, character, and capabilities, her aberrant criminal behavior, and the applicable section 3553 factors, a downward departure of 1-month, allowing Ms. Gonzales' immediate release from custody, is warranted, and the resulting sentence more than sufficient, but not greater than necessary, to serve as adequate punishment and deterrence for her actions and in order to accomplish the court's goals.

Consistent with the probation officer's findings and recommendation, the defense further requests the court find Ms. Gonzales is unable to pay any non-mandatory fines and costs.

9

# IV.

# APPLICABLE LEGAL PRINCIPLES

Pursuant to 18 U.S.C. section 3553(a), this sentencing court must weigh and balance the goals of sentencing, considering the appropriate punishment, deterrence, protection of society, and rehabilitation of the defendant. In exercising its discretion, the court must impose a sentence individually particularized to this defendant, and render a judgment which is minimally sufficient, but not greater than necessary, to achieve the goals of sentencing, and while exhibiting leniency. (*Kimbrough v. United States* (2007) 552 U.S. 85 [128 S.Ct. 558, 570, 575, 169 L.Ed.2d 481].)

## A.

## NATURE AND CIRCUMSTANCES OF OFFENSE

In the present matter, although the offense is serious in nature, based on the facts and circumstances leading up to, and resulting in, Ms. Gonzales' involvement in the criminal offense for which she stands convicted as forth herein, the punishment need not include an additional period of incarceration.

As noted herein, until 2018-2019, Ms. Gonzales' led a law-abiding life as a supportive wife and mother of two young daughters. As a result of the family's dire financial issues, her "forced" separation from her husband, and the stress of she and her daughters living with her parents, and separate from her husband, Ms.

Gonzales re-connected with some friends from high school, began partying and using methamphetamine, and engaged in minor criminal activities. (PSR ¶¶ 60, 69) When introduced to a means of making "easy money," and without considering the severity of the crimes or potential consequences of her actions, she and her husband engaged with others to transport illegal aliens to the Inland Empire.

Ironically, and unlike her co-defendants who profited from their involvement in the current offense (PSR ¶ 23), and although Ms. Gonzales engaged in the criminality for the financial gain to be realized, she never received the $1000 promised to her.

While not diminishing the significance of her unlawful actions, considering the convergence of the series of unique events leading up to her criminal behavior, her role in the offense, and her financial motivation, strict adherence to the applicable sentencing guidelines is unwarranted and unnecessary.

B.

HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Appearing before the court is a soon to be 31-year old wife and mother of two young girls, who have suffered terribly from Ms. Gonzales' behavior. Prior to her marriage in November 2014 (PSR ¶ 58), Ms. Gonzalez graduated from high school with a 3.8 GPA, and attended Chaffey College for two years (2006-2008.) (PSR ¶ 72.)

After a series of other jobs, from 2011 to 2015, she worked at the Arrowhead Credit Union as a teller supervisor and loan officer, until she quit in 2015 to stay at home with her then six-year old daughter, Bryanna, and her newborn daughter, Natalia. (Letter p. 4; PSR ¶¶ 59-60, 75-78.) Not only did Ms. Gonzales stay at home to take care of her newborn, but she was very active and involved with her daughters and their school activities. (PSR ¶¶ 59, 61.)

Although Ms. Gonzales' husband, Nicholas Gonzales, has been employed as an electrician, having suffered a series of epileptic seizures since 2010, he has repeatedly had his license suspended by the California Department of Motor Vehicles. (PSR ¶ 60.) As a result, between 2014 and 2016, when he secured employment out of the area, Ms. Gonzales had to drive him to and from work, which often involved a twice daily four-hour round trip. These endeavors were very difficult on Ms. Gonzales and on her daughters.

As a result of his licensing problems, Nicholas often found himself out of work, and in 2016, in anticipation of filing a bankruptcy petition, he and Ms. Gonzales entered into a debt consolidation plan. Within the year, and in 2017, Nicholas lost another job (due to his lack of transportation), they lost their residence, and were forced to move in with Ms. Gonzales' parents. (PSR ¶ 60.)

/////

/////

While living with her parents, Ms. Gonzales' debts continued to amass. Finally, in 2018, while Nicholas was unemployed and did not appear to be motivated to finding a job, her parents issued an ultimatum - they would allow Ms. Gonzales and her daughters to remain in their home, but Nicholas had to leave. (PSR ¶ 60.) As a result, Nicholas moved in with his mother, which was nearby, while Ms. Gonzales and their daughters remained with her family. Ms. Gonzales and Nicholas attempted to maintain their relationship, and she frequently stayed at his mother's residence as well as that of her parents.

The period of their separation was very stressful for Ms. Gonzales. (Letter p. 4; PSR ¶ 60.) In an attempt to alleviate her problems, and to "take a break" from being the primary care-taker of their daughters, Ms. Gonzales began going out and partying with old friends she knew from school. Ms. Gonzales' parents allowed her to go out and socialize because her mother was retired, soft-hearted, and enjoyed caring for the girls; and, her father was not one to intervene or speak out. (PSR ¶ 59.)

Once she began going out, Ms. Gonzales enjoyed her new-found "freedom." With her "new" friends, Ms. Gonzales began smoking and snorting methamphet-amine, mostly on weekends. (PSR ¶ 69.) During this period, Ms. Gonzales also engaged with her friends and was cited for shoplifting in Riverside and possession of paraphernalia in San Bernardino. (PSR ¶¶ 50-51.) It was as a result of these

relationships that Ms. Gonzales connected with those who could pay her for transporting illegal aliens to the Inland Empire.

In regard to the two state misdemeanor warrants referenced by the probation officer, it is noted that in regard to Riverside County Superior Court, case number RIM1901810, Ms. Gonzales is charged with a misdemeanor, shoplifting in violation of California Penal Code section 488, occurring on September 19, 2018. On November 11, 2018, she was sent a notice to appear on March 27, 2019; however, due to having not received the notice, she failed to appear on that date and a warrant was issued for her arrest.[1] (Exh. A, Riverside Court docket, p. 19.)

In San Bernardino County Superior Court, case number MWV19011421, Ms. Gonzales is charged with a misdemeanor, possession of drug paraphernalia (a pipe) in violation of California Health and Safety Code section 11364, occurring on April 9, 2019. On May 30, 2019, a complaint was filed against Ms. Gonzales; however due to her incarceration in the current matter, she did not appear on the July 25, 2019, scheduled arraignment date and a warrant was issued for her arrest. (Exh. B, San Bernardino Court docket, p. 23.)

Barring the noted relationships and her drug usage, the likelihood of Ms. Gonzales engaging in further criminal activity is virtually non-existent. Corrobor-

---

[1] The filing of the misdemeanor complaint on February 19, 2019, was well after the date she was noticed to appear pursuant to the citation issued.

ation of this contention is demonstrated in Ms. Gonzales' ability to secure employment while housed in the San Bernardino County Central Detention Center (PSR ¶ 74) [2] and her successful completion of the Cross-roads program during her incarceration.

## C.

## NECESSITY OF JUST PUNISHMENT

As noted above, based on her education, work history, and the circumstances leading to the current offense which are unlikely to recur, the chance of Ms. Gonzales reoffending is virtually non-existent. During her five-months of incarceration, she has been gainfully employed in the jail and completed a very beneficial Cross-roads Program. Most significantly, her separation from her daughters has had a tremendous impact on her. Having to speak with them on the phone or through the jail visiting glass is incentive enough for her to avoid any further violation. With the assistance of her supervised release officer during the next three years, and the strong support of her family (PSR ¶ 56), her realization of her past errors and that which caused her to engage in her criminal conduct, Ms. Gonzales is a viable candidate to successfully complete what is required of her.

---

[2] Although working in the jail at the time of her probation interview, Ms Gonzales lost her assignment when threatened by other inmates who recognized her as a former employee at the Arrowhead Credit Union. As a result of these threats, Ms. Gonzales was moved to a different area of the jail and her trustee status was taken from her for "her own protection."

15

Pursuant to the Sentencing Guidelines, and whereas the probation officer recommend an additional month in custody, the necessity of just punishment is well served by a reduction of that one month in custody, resulting in a commitment of five months.

### D.

### AFFORD ADEQUATE DETERRENCE AND PROTECTION OF THE PUBLIC

Based on the same facts and argument set forth above, an additional month of incarceration for Ms. Gonzales will not enhance the need for adequate deterrence or protection of the public. At this time, what will be most beneficial to the community is the release of Ms. Gonzales on supervised release, her reunification with her daughters, re-obtaining gainful employment, and continuing with ongoing drug counseling and rehabilitation.

### E.

### AVOID DISPARITY OF SENTENCE

At the time of the filing of this sentencing brief, Ms. Gonzales' co-defendants have not yet been sentenced by the court, therefore, they cannot be referenced for the purpose of assessing a disparity of sentencing. What can he said is that her role and involvement in the offense charged did not come close to that of the others.

As a matter of reference, it is noted that Ms. Gonzales' husband was arrested in Arizona for a similar offense and shortly before Ms. Gonzales' arrest. As a result of his prosecution in state court in Arizona, he pled guilty to a misdemeanor offense, and was released from custody after a brief time (days) in custody on court probation. (PSR ¶ 58.)

## V.

## FINES AND RESTITUTION

Based on the facts and circumstances presented, and in light of the defendant's indigency and her current financial obligations and situation, the court should adopt the probation officer's recommendation and waive any and all non-mandatory fines and fees. (PSR ¶ 87.)

## CONCLUSION

One of the most significant factors in the court's sentencing determination is the fact that, prior to her arrest, Ms. Gonzales took her daughters well-being and her parents' assistance for granted. Since her incarceration, and from her telephone calls and (two) jail visits with her daughters and her mother, Ms. Gonzales now realizes how she has hurt them. Her daughters' tears constitute significant punishment for her selfishness. Her daughters' suffering from Ms. Gonzales' absence (PSR ¶ 59) is a major factor the court should consider in determining how

much longer she should remain incarcerated. (see, *United States v. Galante* (2nd Cir. 1997) 111 F.3d 1029, 1034 [affirming a downward departure from 46-57 months to 8 days where the defendant was a conscientious and caring father of two sons who would have faced severe financial hardships by an extended period of incarceration].)

Based upon the facts and circumstances presented herein, it is respectfully requested that this court sentence the defendant in accordance with the recommendation of the probation officer, with the exception of ordering Ms. Gonzales' immediate release from custody, which is more than sufficient, but not greater than necessary, to serve as adequate punishment and deterrence for her actions and in order to accomplish the goals of this court.

Dated:   October 7, 2019, at Mission Viejo, California.

                                        Respectfully submitted,

                                        /s/ John N. Aquilina
                                        JOHN N. AQUILINA
                                        Attorney for defendant,
                                        CASSANDRA GONZALES